UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:16-cv-37-DLB-EBA

AMAR GUEYE,                                                                                              PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S**
                            **REPORT AND RECOMMENDATION**
                            **AND ORDER**

DIANA STRAUSS,
LAVETTE WILLIAMS, and
COVINGTON HOUSING AUTHORITY,                                                            DEFENDANTS.

\* \* \* \* \* \* \*

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Covington Housing Authority ("HAC") is a public housing authority that provides subsidized government housing and other services to low-income residents of Covington, Kentucky. [R. 20-1]. The HAC owns 813 housing units in traditional apartment-style residential developments and "scattered sites" (i.e. single family homes and duplexes in neighborhoods throughout the city), and a limited number of those units are one-bedroom apartments. [R. 20 at 3]. Since there are more applicants for one-bedroom apartments than there are available apartments in HAC's housing stock, [R. 23 at 3], the HAC utilizes a waiting list to determine which applicants will be offered one-bedroom apartments as they become available. [R. 23 at 3–4]. More specifically, an applicant's place on HAC's waiting list is determined using a point system that gives preference to those applicants who already reside or work in Covington, who have worked at the same job for a specified length of time, who are at least 62 years old, who are disabled or homeless veterans, who are enrolled full-time in school, who are victims of domestic

1

violence or hate crimes, who are displaced by disaster, and who otherwise have a high rent burden. [Rs. 20-2 at 1–2, 23 at 3–4].

In September of 2014, Plaintiff Amar Gueye applied to the HAC for a one-bedroom apartment. [R. 20-4]. Where his application indicated he was not a Covington resident and not a victim of domestic violence, [R. 20-4 at 1], his place on the waiting list for a one-bedroom unit was initially relatively low. Then, in July of 2015, Gueye provided the HAC with information indicating he had been the victim of domestic violence, [R. 20-5], at which point his position on the waiting list improved. [R. 20-3 at 30].

Despite this improvement, on November 18, 2015, Gueye filed a complaint with the Kentucky Commission on Human Rights (hereafter "KCHR"), alleging he had been denied housing on the basis of race, gender, national origin, and religion, [R. 20-6], and lodged a similar complaint with the United States Department of Housing and Urban Development (hereafter "HUD"). [R. 20-7]. At the time he filed those complaints, Plaintiff was eighth on the waiting list for City Heights, fifth on the waiting list for Golden Tower, and eighteenth on the waiting list for Latonia Terrace. [R. 20-8 at 2]. However, KCHR and HUD issued rulings on February 18, 2016 and September 16, 2016, respectively, each separately finding that the HAC had not discriminated against Gueye by initially denying him housing. [Rs. 20-9, 20-10]. KCHR concluded that, "[b]ased upon our legal analysis of the evidence gathered and contained in the investigative file . . . the investigative record does not support a probable cause determination that the Respondents Housing Authority of Covington KY, et al., have engaged in an unlawful practice under the Kentucky Civil Rights Act." [R. 20-9 at 3]. Likewise, HUD found that the HAC had "done everything that they are required to do under their housing policies and have

2

approved the Complainant for occupancy once an apartment is available. [The HAC has] not refused to rent to the Complainant. He simply has to wait until there is an available unit. . . . The Complainant has not been denied housing. The Housing Authority intends to rent to the Complainant when his name reaches the top of the list and a unit becomes available." [R. 20-10 at 4].

In February of 2016, a public housing unit did become available for Mr. Gueye, and he signed a lease with the HAC on February 26, 2016. [R. 20-11]. Though his initial complaint was founded upon the allegedly discriminatory denial of housing, having now been placed in public housing, Gueye's allegations against the HAC have shifted to the condition of his unit and HAC's efforts to perform repair and maintenance, as reflected by his Motion for Injunctive Relief. See generally [R. 15].

On February 24, 2016, Plaintiff Amar Gueye filed a *pro se* complaint, [R. 2], alleging that Defendants Covington Housing Authority (hereafter "HAC"), Head of Housing Diana Strauss, and Assistant Lavette Williams denied his application for government-subsidized housing in violation of the Fair Housing Act, 42 U.S.C. § 3604[1]. [R. 2 at 7–14]. Mr. Gueye claims he filed a housing application with HAC on or around October of 2014, [id. at 2], but was denied housing due to his race, religion, age, and national origin. [Id.]. A single-bedroom public housing unit did eventually become available for Gueye in February of 2016, and he signed a lease with the HAC on February 26, 2016, and currently resides there. [R. 20-11].

Plaintiff alleges he suffered housing discrimination through HAC's initial denial of his

---

[1] Plaintiff also named Housing Enforcement Investigator Liandra Goatley, HUD Secretary Julian Castro, and the U.S. Department of Housing and Urban Development as defendants in the complaint, but the claims against those Defendants were dismissed without prejudice, where Plaintiff failed to state a claim for relief against them. [R. 15].

3

housing application, and their failures to provide him with "basic information such as rank on the list" or "criteria [they] rely on" in deciding how to allocate the available housing. [Id.]. Plaintiff seeks relief in the form of compensatory and punitive damages, and through injunctive relief. [R. 2 at 8].

Plaintiff has also filed a Motion for Injunctive Relief and Restraining Order, [R. 15], asserting that HAC failed to adequately repair conditions in his apartment, failed to provide him with sufficient notice of the need to enter his apartment to make repairs, and made unauthorized entry into his apartment to make repairs. [Id.]. Gueye's motion for injunctive relief requests that the Court order HAC to provide him with at least two weeks' notice for any maintenance repairs in his apartment, remove "protruding irons" in the shower, "change the sets of polluted AC conditioners or simply remove them since [he] is not using them," and asks "for a HUD inspector outside of Covington Housing to schedule an inspection about the unhealthy AC conditions and the removal of the irons in his shower since he is not using that seat." [Id. at 1–2].

Additionally, Plaintiff has filed a Motion to Compel Refund of Rent Surplus, [R. 27], seeking a refund of $266.00 in rent surplus allegedly owed to him, and most recently filed an Emergency Motion for Immediate Consideration and Stay Pending Appeal, [R. 46], requesting that the Court stay the Kenton County Sheriff's notice to vacate property on July 5, 2017, based on his lack of income.

In turn, Defendants HAC, Diana Strauss, and Lavette Williams have filed a joint Motion for Summary Judgment, [R. 23], arguing that the evidence plainly demonstrates that HAC "had a legitimate, nondiscriminatory reason for denying Gueye housing until February, 2016." [R. 23 at

4

6–7]. Defendants explain that the evidence demonstrates Gueye was placed on the waiting list, his place determined "by a neutral, race-blind, color-blind, gender-blind, ethnicity-blind and religion-blind point system," [Rs. 20-2, 20-8], and notes Gueye was in fact assigned a one-bedroom unit once he rose to the top of the waiting list in February of 2016. [R. 20-11]. Defendants therefore move for summary judgment, contending that there is "simply is no evidence from which a jury could conclude that the legitimate, non-discriminatory reason articulated by Defendants was merely pretext for them to discriminate against Gueye." [R. 23 at 7]. Defendants have also filed a Motion to Declare Plaintiff a Vexatious Litigator, [R. 24], arguing that Gueye has been a "prolific *pro se* litigant with a long history of misusing his *in forma pauperis* status to file frivolous lawsuits alleging that others have discriminated against him on the basis of his race and religion," and based on his litigious history, asks this Court to exercise its inherent authority to prevent abuse of the judicial process by enjoining Plaintiff from filing further "frivolous or malicious pleadings." [Id. at 4].

Pursuant to the Court's Standing Referral Order, [R. 4], this matter has been referred to the undersigned for a recommended disposition concerning any pretrial matter that disposes of a charge or defense, including but not limited to any motion specifically listed in Rule 59(b). For the reasons set forth below, the undersigned RECOMMENDS that Defendants' Motion for Summary Judgment, [R. 23], and Motion to Declare Plaintiff a Vexatious Litigator, [R. 24], be GRANTED, and RECOMMENDS that Plaintiff's Motion for Injunctive Relief, [R. 15], and Emergency Motion for Consideration and Stay Pending Appeal, [R. 46], be DENIED. The Court further ORDERS that Plaintiff's Motion to Compel Refund, [R. 27], be DENIED AS MOOT.

## ANALYSIS

### Defendants' Motion for Summary Judgment

Defendants' Motion for Summary Judgment, [R. 23], requests that the Court grant the Defendants judgment as a matter of law on the discrimination claims asserted against them in Gueye's complaint. The undersigned recommends that the motion for summary judgment be granted, where Plaintiff has failed to show any issue of material fact to warrant a claim for relief under the Fair Housing Act, 42 U.S.C. § 3604.

Summary judgment is appropriate when the movant has shown that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Barr v. Lafon, 538 F.3d 554, 561 (6th Cir. 2008). The movant bears the initial burden of demonstrating the absence of a genuine factual dispute. B.F. Goodrich v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant may discharge this burden "by showing . . . that there is an absence of evidence to support the nonmoving party's case." CenTra, Inc. v. Estrin, 538 F.3d 402, 412 (6th Cir. 2008) (internal citations omitted). Once that burden is met, the respondent must then "produce specific facts demonstrating a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the respondent must cite to "significant probative evidence" in the record to support its complaint and show that an issue of material fact exists. Jones v. Union Co., Tenn., 294 F.3d 417, 423 (6th Cir. 2002); Moore v. Phillip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993); Anderson, 477 U.S. at 249–50.

A genuine dispute as to a material fact must be more than a "mere scintilla of evidence," Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 613 (6th Cir. 2003), *citing* Anderson, 477 U.S. at 251.  Rather, a genuine factual issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Hendrick v. W. Reserve Care Sys., 355 F.3d 444, 451 (6th Cir. 2004), *citing* Anderson, 477 U.S. at 248.  When analyzing a summary judgment motion, the court views all factual evidence and draws all reasonable inferences in favor of the non-moving party.  Matsushita, 475 U.S. at 587–88 (1986); Warf v. Bd. of Elections, 619 F.3d 553, 558 (6th Cir. 2010).  The Court must decide whether the evidence "presents a sufficient disagreement to require submission to a jury," or, "whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251–52; Harrison v. Ash, 539 F.3d 510, 516 (6th Cir. 2008).

Plaintiff's claims are premised on alleged discrimination under the Fair Housing Act.  The Fair Housing Act protects individuals from discrimination on the basis of race, color, religion, sex, familial status or national origin with respect to the sale or rental of a dwelling.  See generally 42 U.S.C. § 3604.  When a defendant moves for summary judgment on a plaintiff's claim that the defendant violated the Fair Housing Act, a Sixth Circuit reviewing court applies the burden-shifting framework set forth in the employment discrimination case of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), using a slightly different formula in the context of housing discrimination cases as opposed to employment discrimination, see, e.g., Lindsay v. Yates, 578 F.3d 407 (6th Cir. 2009), to determine whether the claim should proceed to trial.  See also Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531 (6th Cir. 2014) ("In analyzing disparate-treatment claim under Fair Housing Act, court applies the *McDonnell*

7

*Douglas* test, which shifts burden of production from plaintiff to defendant and then back to plaintiff in effort to zero in on specific intent underlying defendant's conduct.")

First, the court considers whether the plaintiff has established a *prima facie* housing discrimination claim by showing: (1) that he belongs to a racial minority; (2) that he applied and was qualified for certain property or housing; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the housing remained available thereafter. Lindsay, 578 F.3d at 415. If plaintiff can successfully establish a *prima facie* case of housing discrimination, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for rejecting plaintiff's claim. Lindsay, 578 F.3d 407. Finally, if the defendant succeeds in doing so, the burden then shifts back to the plaintiff to "identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination." Id. At all times, the burden of persuasion rests with the plaintiff. Hollis, 750 F.3d at 538.

Gueye has not established a *prima facie* case of housing discrimination under this standard. Though he arguably suffered an adverse housing decision when he did not immediately receive a housing unit upon applying for one, and he is a member of a racial minority, Gueye provides no evidence to show how the initial adverse housing decision was a result of unlawful discrimination. However, even assuming that Gueye could establish a *prima facie* case of discrimination, the burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for rejecting plaintiff's claim. Lindsay, 578 F.3d 407. They have done so; the evidence plainly demonstrates that Defendants had a legitimate, nondiscriminatory reason for denying Gueye housing until February of 2016, when he was ultimately offered a housing

unit. Defendants have provided HAC's "Resident Selection and Assignment Plan," the exact criteria by which they prioritize their applicants, [R. 20-2 at 1–2], and this evidence persuasively demonstrates that Gueye's place on the waiting list was determined by non-discriminatory factors. As explained above, Gueye's application initially indicated he was a Cincinnati, Ohio resident (not a Covington resident) and did not indicate he was a victim of domestic violence, [R. 20-4 at 1], and so his place on the waiting list was at first relatively low. After providing evidence that he was a victim of domestic violence, [R. 20-5], then his waiting list position improved. [R. 20-3 at 30]. The record indicates that race, age (with the exception of the "62 and over" provision, [R. 20-2 at 2], which actually worked in Gueye's favor, improving his priority on the list), religion, and national origin played no role in the selection process, and Gueye presents no evidence to the contrary.

Defendants having shown evidence of a non-discriminatory reason for the initial denial of housing, the burden then shifts back to Gueye to "identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination." Lindsay, 578 F.3d 407. Plaintiff's response to the motion for summary judgment, [R. 28], fails to do so, again relying on attacks against defense counsel and HAC for their incompetency and "racist propaganda." [Id. at 4–5].

Having viewed all factual evidence and drawing all reasonable inferences in favor of Plaintiff, Matsushita, 475 U.S. at 587–88 (1986), the undersigned finds that the evidence fails to provide a "sufficient disagreement to require submission to a jury," Anderson, 477 U.S. at 251–52. Gueye has not established a *prima facie* case for housing discrimination, but even if he could make a *prima facie* case, Defendants have shown a non-discriminatory reason for Gueye's rank

9

and placement on the HAC waiting list. Gueye, as the respondent to the motion, has not met his burden of providing "specific facts demonstrating a genuine issue for trial," id. at 247–48, and as a result, the undersigned recommends that Defendants' Motion for Summary Judgment, [R. 23], be granted, and that all claims against Defendants be dismissed.

## Plaintiff's Motion for Injunctive Relief

Gueye's motion for injunctive relief requests that the Court order HAC to provide Gueye at least two weeks' notice before making any maintenance repairs in his apartment, remove "protruding irons" in the shower, "change the sets of polluted AC conditioners or simply remove them since [he] is not using them," and for "for a HUD inspector outside of Covington Housing to schedule an inspection about the unhealthy AC conditions and the removal of the irons in his shower since he is not using that seat." [R. 15 at 1–2]. The Court recommends that Plaintiff's motion for injunctive relief be denied.

Injunctions are extraordinary and drastic remedies never awarded as of right, and the plaintiff bears the burden to justify relief. Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court, 769 F.3d 447, 453 (6th Cir. 2014); O'Toole v. O'Connor, 802 F.3d 783 (6th Cir. 2015). A preliminary injunction may be granted only if a legal remedy would be inadequate, and a district court's decision denying a preliminary injunction is reviewable only for an abuse of discretion. Reese v. City of Columbus, 71 F.3d 619 (6th Cir. 1995); Tyson Foods, Inc. v. McReynolds, 865 F.2d 99, 100 (6th Cir.1989). In evaluating a motion for preliminary injunction, the reviewing court must consider and balance four factors: (1) the likelihood that the plaintiff will succeed on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and, (4)

the extent to which the public interest would be served by granting the injunction. Golden v. Kelsey–Hayes Co., 73 F.3d 648, 653 (6th Cir. 1996), *cert. denied*, 519 U.S. 807, (1996); Connection Distributing Co. v. Reno, 154 F.3d 281 (6th Cir. 1998). Though no single factor is controlling, a finding that there is no likelihood of success on the merits is typically determinative and fatal to the motion. O'Toole, 802 F.3d at 788; Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000).

Under the aforementioned standard, Gueye is not entitled to injunctive relief. For the reasons that it recommends granting Defendants summary judgment, this Court finds no likelihood of Gueye's success on the merits of his complaint – given the utter lack of evidence of discrimination on Defendants' part, and the fact that he has received HAC-provided housing in accordance with their priority system. This finding is determinative and fatal to the motion for injunctive relief. O'Toole, 802 F.3d at 788

The other three factors for whether to grant an injunction – (2) whether plaintiff will suffer irreparable harm; (3) whether granting the injunction will cause substantial harm to others; and (4) if the public interest would be served by granting the injunction, Connection, 154 F.3d 281 – also weigh against granting the requested injunction. Because preliminary injunctions are so extraordinary and drastic, Plaintiff bears the burden of satisfying these factors, O'Toole, 802 F.3d at 788. Regarding irreparable harm, Gueye fails to meet his burden of articulating any specific harm that would result from the injunction's denial, merely citing general concerns about health and safety. [R. 15]. Where Gueye fails to describe any specific irreparable harm, this second factor weighs against granting the injunction.

The third and fourth factors – potential harm or burden to the Defendants, and the potential benefits to the public interest – also weigh against the injunction. Imposing a two-week notice requirement for Defendants to provide notice of any maintenance would unduly impose a burden upon them. HAC explains that its routine maintenance is performed by in-house staff, and because their "preventative maintenance work tends to be interrupted by problems that must be addressed immediately, it is difficult to plan the performance of preventative maintenance with enough precision to provide any resident with two weeks' notice that an entry will occur," making it "impractical for the HAC to provide Gueye with two weeks' notice of an entry for preventive maintenance work." [R. 20 at 9–10]. Fourth and finally, where the requested injunction would only affect two parties – Gueye and the HAC – it would not serve any public interest. Plaintiff's reply, comprised largely of personal, racially-charged criticisms of defense counsel's competence, does not address any of these factors. [R. 21 at 1–2].

Where Plaintiff has failed to meet his burden as to all four factors considered when granting or denying an injunction, an injunction is not appropriate under the applicable standard, and Plaintiff's Motion for Injunctive Relief, [R. 15], should be denied.

### Defendants' Motion to Declare Plaintiff a Vexatious Litigator

The Court further recommends that Defendants' Motion to Declare Plaintiff a Vexatious Litigator, [R. 24], to which Plaintiff failed to provide any response, see [R. 29], be granted. District Courts have inherent authority to prevent abuse of the judicial process by enjoining those who file multiple, frivolous or malicious pleadings from continuing to do so. Filipas v. Lemons, 835 F.2d 1145 (6th Cir. 1987) (civil rights plaintiffs were vexatious litigants who had filed many complaints concerning the same automobile accident; district court properly entered order

12

requiring leave of court before plaintiffs filed any further complaints, and such order did not violate First Amendment); Chambers v. NASCO, Inc., 501 U.S. 32 (1991) (court may assess attorney fees when party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); see also Johnson v. Bunko, E.D. Ky. Case No. 5:6-CV-175-JMH at R. 3 (following plaintiff's twelfth *pro se* civil action and request to proceed *in forma pauperis*, the Court discouraged him from future frivolous filings, having previously advised him that the Court would exercise its inherent authority to prevent abuse of the judicial process inherent in plaintiff's malicious, frivolous filings).

In choosing sanctions, the Court may not absolutely foreclose an individual from initiating an action or pursuing an appeal in federal court. Ortman v. Thomas, 99 F.3d 807 (6th Cir. 1996). Rather, the district courts must use the least restrictive sanction necessary to deter the inappropriate behavior. Id. at 811. Among permissible sanctions, the Court may place pre-filing restrictions on an individual with a history of repetitive or vexatious litigation. Hyland v. Stevens, 37 Fed. Appx. 770, 771 (6th Cir. 2002) (*citing* Ortman v. Thomas, 99 F.3d 807, 811 (6th Cir. 1996); Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 269 (6th Cir 1998); Filipas, 835 F.2d at 1146. In most cases, the preferred approach is to require an abusive litigant to obtain leave of the court before filing any more lawsuits. Id. Also, where a litigant has "demonstrated a 'history of unsubstantial and vexatious litigation [amounting to] an abuse of the permission granted to him to proceed as a pauper in good faith . . .'", the Court may enter an order prospectively denying *in forma pauperis* status and direct the Clerk of the Court to return unfiled any complaint or petition submitted by the litigant unless accompanied by the appropriate filing

fee. Johnson, No. 5:6-CV-175-JMH at R. 3, *citing* Reneer v. Sewell, 975 F.2d 258, 260–61 (6th Cir. 1992).

Defendants have provided adequate evidence to establish that Amar Gueye has been a prolific *pro se* litigant with a lengthy history of using *in forma pauperis* status to file frivolous suits alleging discrimination against his race and religion. Though the Court will refrain from detailing this lengthy history in the present Report and Recommendation, given that Defendants have already done so on the record, see [R. 24 at 4–25], the undersigned will highlight a couple illustrative points regarding Gueye's litigious history. Gueye first filed four suits in the U.S. District Court for the Southern District of New York, and according to the electronic dockets in those four cases, the first case was dismissed for failure to state a claim, the second and third cases were both dismissed with a certification by the District Court that any appeal would not be taken in good faith, and in the fourth case, defendants were granted summary judgment where no evidence supported Gueye's claims. [R. 24 at 4–5]. This pattern of frivolous filings then continued in the U.S. District Court for the Southern District of Ohio, where Gueye filed thirteen more suits. [Id. at 5–6]. All of those suits were dismissed.

Notably, in one of those thirteen cases – Gueye v. Page Tower, Case No. 1:09-CV-00385 – the Southern District of Ohio granted summary judgment to defendant on the basis that Gueye had offered no proof to support his discrimination claims, but additionally warned Gueye that "he will be deemed a vexatious litigator if he continues to file frivolous litigation in the Southern District of Ohio." Gueye v. Page Tower, 2011 U.S. Dist. LEXIS 49987 (S.D. Ohio).

Then, in the subsequent case of Gueye v. UC Health, Case No. 1:13-CV-00673, the Southern District of Ohio did finally declare Gueye a vexatious litigator. In that case, Magistrate

14

Bowman recommended dismissal of Gueye's discrimination claims, at which point Gueye filed a document entitled, "Appeal from the Illegal Supplemental Report & Recommendation by the Incompetent & Prejudice Judge," containing a number of personal attacks on the magistrate judge.  See [R. 24 at 11–12].  Defendants in UC Health accordingly moved the Southern District of Ohio to declare Gueye a vexatious litigator, and after conducting a hearing, the Court granted that motion and enjoined Gueye from "filing any future civil actions in the Southern District of Ohio unless the complaint or petition is first certified as non-frivolous by an attorney in good standing in this Court or the jurisdiction in which he or she is admitted . . . and unless [Gueye] pays the full filing fee."  Gueye v. UC Health, 2014 U.S. Dist. LEXIS 141834 (S.D. Ohio).

Gueye then began filing suits in the Eastern District of Kentucky, where he has filed six more suits, including the present suit against HAC.  In three of these six cases, Gueye failed to cooperate in the discovery process, and his claims were dismissed as a sanction.  [R. 24 at 14]. In the fourth case – Gueye v. DHL, Case No. 2:14-CV-00146 – Gueye filed a complaint alleging discrimination against defendant on the basis of his race, ethnicity and religion, but then filed a subsequent report so "replete with unwarranted personal attacks on the Court itself and the general integrity of the judicial process," that the Court ordered the report stricken.  [R. 24 at 14–15].  Despite the Court's admonitions, Gueye filed another document which the Court struck, before "permanently barr[ing] [Gueye] from filing any additional documents in case 2:14-CV-146 unless he first obtains approval from the United States Magistrate Judge of the Eastern District of Kentucky assigned to the case.  Said approval shall be gained only if, upon review, it is clear that the contents of the submitted documents are not scurrilous, contumacious and/or being submitted for any improper purpose."  [R. 24 at 15].  The Court eventually dismissed the

15

case in its entirety on the merits, and the fifth case in this district – <u>Gueye v. Richards</u>, Case No. 2:15-CV-00178 – was likewise dismissed on its merits. <u>Id.</u>

Finally, in February of 2016, Gueye initiated the present suit, his sixth and most recent suit in the district. His pattern of volatile comments and unfounded accusations has indeed carried over into the present matter, as evidenced by his objections to the undersigned's previous Report and Recommendation, <u>see</u> [R 10], and his Reply regarding his Motion for Injunctive Relief. [R. 21].

The Court has inherent authority to sanction *pro se* litigants for engaging in frivolous conduct and harassing litigation conduct, and punish disrespect or contempt for the court, <u>First Bank of Marietta v. Hartford Underwriters Ins. Co.</u>, 307 F.3d 501 (6th Cir. 2002); <u>In re Smothers</u>, 322 F.3d 438 (6th Cir. 2003), in order to protect the orderly administration of justice and to maintain the authority and dignity of the court from a full range of litigation abuses. <u>Mitan v. International Fid. Ins. Co.</u>, 23 Fed. Appx. 292 (6th Cir. 2001). The possible sanctions can include restrictions on future access to the judicial system, so long the Court does not absolutely foreclose an individual from initiating an action or pursuing an appeal in federal court. <u>Ortman v. Thomas</u>, 99 F.3d 807 (6th Cir. 1996); <u>Futernick v. Sumpter Twp.</u>, 207 F.3d 305 (6th Cir. 2000); <u>A & H Mgmt. Servs. v. Chafflose Corp.</u>, 2011 U.S. App. LEXIS 26161 (6th Cir.); <u>Siller v. Haas</u>, 21 Fed. Appx. 270 (6th Cir. 2001). Sanctions can also include prohibition from proceeding *in forma pauperis*. <u>Reneer v. Sewell</u>, 975 F.2d 258 (6th Cir. 1992); <u>Maxberry v. SEC</u>, 879 F.2d 222 (6th Cir. 1989).

Where Plaintiff has failed to respond to the Defendants' motion to declare him vexatious, and in light of Gueye's lengthy, colorful history of filing frivolous suits in multiple districts

16

across the country, the Court finds sufficient evidence to declare him a vexatious litigant in the Eastern District of Kentucky, and accordingly recommends enjoining him from filing any future civil actions in the Eastern District of Kentucky unless his complaint or filing is first certified as non-frivolous by an attorney in good standing in this Court or the jurisdiction in which he or she is admitted, and unless Gueye pays the full filing fee. For these reasons, the Court recommends that Defendants' Motion [R. 24] be granted.

### Plaintiff's Motion to Compel Refund

Plaintiff has also filed a Motion to Compel, [R. 27], requesting that the Court require HAC to issue him a refund of the overpayment of rent. The matter is moot; Defendants explain that, on December 8, 2016, HAC employee Sharon Brown requested that HAC issue Gueye a check in the amount of $267.32, representing the balance remaining in Gueye's account at that time. [R. 32 at 2]. HAC has already issued that refund, and Gueye has already cashed the refund check. [Rs. 32-8, 32-9]. Defendants have also provided an affidavit to that effect, from the Executive Director of the Housing Authority of Covington, indicating payment was made to Gueye in full. [R. 32-4]. Thus, Gueye's Motion to Compel Refund of Rent Surplus is now moot and will be denied on that basis.

### Plaintiff's Emergency Motion for Consideration and Motion for Stay Pending Appeal

Finally, Plaintiff has most recently filed a Motion for Consideration and Motion for Stay Pending Appeal. [R. 46]. Plaintiff moves the court to grant an emergency motion "for Kenton County Sheriff's notice to vacate property on July 5, 2017 based on his lack of income to secure moving fees and obtain safe housing." [Id. at 1]. Plaintiff also requests a "reasonable time to respond to any adverse decision." [Id.].

17

Though it is somewhat unclear what Plaintiff requests, the undersigned has construed the motion as a request for an injunction to enjoin the Kenton County Sheriff's Office from evicting him from the HAC premises. Plaintiff provides little explanation of how he is entitled to an injunction, or what are the circumstances underlying the motion.

To the extent Plaintiff's motion is a request for an injunction preventing his eviction by Kenton County law enforcement, the undersigned recommends the motion be denied. Injunctions are extraordinary remedies, and may only be granted if a legal remedy would be inadequate. Reese v. City of Columbus, 71 F.3d 619 (6th Cir. 1995). Plaintiff has not shown thus far that he is entitled to any legal remedy at all, let alone that a potential legal remedy would be inadequate. Moreover, to award an injunction, Plaintiff bears the burden as to all four factors listed *supra* at 20 for granting an injunction, see, e.g., Golden, 73 F.3d at 653, but provides no argument as to any of the four elementa. Where Plaintiff has requested requests a "reasonable time to respond to any adverse decision," [R. 46 at 1], the Court ensures Plaintiff that he will have a 14-day period from the date of this Report and Recommendation to raise any objections he may have with the Court's findings. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001)

## **RECOMMENDATION**

For the reasons set forth above, the undersigned RECOMMENDS that:

(1) Defendants' Motion for Summary Judgment [R. 23] be GRANTED;

(2) Plaintiff's Motion for Injunctive Relief [R. 15] be DENIED;

(3) Defendants' Motion to Declare Plaintiff Vexatious Litigator [R. 24] be GRANTED; and;

(4) Plaintiff's Motion for Consideration and Motion for Stay Pending Appeal [R. 46] be

DENIED.

Additionally, the undersigned **ORDERS** that:

(1) Plaintiff's Motion to Compel Refund [R. 27] be DENIED AS MOOT.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004). Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

Signed July 7, 2017.



19